IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CIVIL NO. 07-0425-WS |
| | ) | |
| LEONARD EDWARD WESTRY, | ) | CRIMINAL NO. 05-0206-WS |
| | ) | |
| Petitioner. | ) | |

**ORDER**

This matter is before the Court on petitioner Leonard Edward Westry's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (doc. 723). The Motion has been briefed and is ripe for disposition at this time.

**I.     Background.**

On February 24, 2006, a grand jury convened in the Southern District of Alabama handed down a Second Superseding Indictment (doc. 433) charging petitioner Leonard Edward Westry and 10 co-defendants with, *inter alia*, conspiring with each other and other persons to possess with intent to distribute a plethora of controlled substances (including morphine, oxycodone, hydrocodone, hydromorphone, methadone, and more than 50 grams of crack cocaine), all in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2.[1]  In addition to the overarching conspiracy count, the Second Superseding Indictment included 33 substantive counts of possession with intent to distribute controlled substances, charging specific defendants with possessing with intent to distribute specific drugs on specific dates.  Westry was charged in Counts 29 and 30 with possessing with intent to distribute crack cocaine on April 22, 2005 and April 25, 2005, respectively, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 860, inasmuch as the offenses were alleged to have occurred within 1,000 feet of real property comprising a public school.

---

[1]     Several of petitioner's co-defendants were family members who share his last name.  Nonetheless, for ease of reference, this Order will refer to petitioner as "Westry."  To the extent that other co-defendants bearing his surname are discussed, they will be distinguished from petitioner in the text to avoid confusion.

The Government's evidence centered on extensive illicit narcotics distribution activity at a residence located at 406 Clay Street in Mobile, Alabama. For a period of years, 406 Clay Street had served as a one-stop 24-hour illegal drug emporium, complete with drive-through service and ready access to a wide variety of controlled substances (prescription pills, crack cocaine, etc.) through a network of distributors who frequented (and often stayed at) the premises to peddle their wares. Westry was one of those distributors. The oft-repeated fact pattern was that a purchaser would drive up to 406 Clay Street, where he or she would be greeted curbside by one of the conspirators. The greeter would ask the customer what particular drugs he or she was looking for, then identify another co-conspirator (usually on the premises) who had the particular drug and make arrangements with that co-conspirator to supply the controlled substances to the buyer. Moments later, the purchaser would drive away with his or her fix of choice.

On March 3, 2006, Westry entered into a Plea Agreement (doc. 454) with the Government pursuant to which he pleaded guilty to Count One of the Second Superseding Indictment, which was the § 846 count charging conspiracy to possess with intent to distribute crack cocaine, oxycodone, methadone, morphine, hydrocodone and hydromorphone. Accompanying this Plea Agreement was a Factual Resume (doc. 455), wherein Westry stipulated and agreed that the Government could prove the following facts, among others, beyond a reasonable doubt: (a) extensive drug distribution activities were ongoing at 406 Clay Street from the late 1990s through April 2005; (b) on January 3, 2005, a confidential informant made a controlled purchase of crack cocaine and oxycontin at 406 Clay Street, with Westry furnishing the crack cocaine after the deal was brokered by co-defendant Ashir Zuniga;[2] (c) on April 22, 2005, an undercover police officer purchased crack cocaine from Westry at 406 Clay Street, with the deal being brokered by co-defendant Samuel Kenyard Beckham; (d) on April 26, 2005, an undercover informant drove up to 406 Clay Street, where he was approached by co-

---

[2] The court file includes at least two different copies of the Factual Resume. In one iteration, the allegations concerning the January 3 transaction are partially crossed out, but in the other, they are not. (*Compare* doc. 455, at 2-3 *with* doc. 742, Exh. 1, at 2-3.) It is unclear which version of the document controls; however, the Court's conclusions herein hold with equal force regardless of whether January 3 transaction is included in or omitted from the analysis.

defendant Kimberly Westry and informed her that he was looking for crack cocaine, after which Kimberly Westry arranged for petitioner to service the informant by walking over to the informant's vehicle and selling him a $40 rock of crack cocaine; (e) co-defendant Beckham agreed to cooperate with the Government and provided an interview in which he stated that Westry sold crack cocaine at 406 Clay Street in $200 quantities; (f) co-defendant Shannon Jones also implicated Westry in drug distribution activities at 406 Clay Street; and (g) a cooperating witness named Michael Spanks implicated Westry and various co-defendants in drug activity at 406 Clay Street, indicating that he had obtained at least three ounces of crack cocaine from Westry from 2000 through 2004. (Factual Resume (doc. 455), at 2-4, 10.)

Pursuant to his obligations under the Plea Agreement, Westry testified on behalf of the Government at the trial of several of his co-defendants conducted before the undersigned in March 2006. In a subsequent Motion for Downward Departure (doc. 549) filed pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e), the Government accurately summarized Westry's performance as a witness as follows: "The defendant implicated all five defendants who went to trial as distributors of drugs at Clay Street, but he denied much of his own participation, including fairly commonly known facts. ... The Government's assessment of the assistance provided by the defendant in the trial was that he was a poor witness, and his denial of responsibility for aspects of his own crimes weakened him further." (Doc. 549, ¶¶ 2, 3.) For example, even after having pleaded guilty to the § 846 conspiracy charge, Westry testified, "We never conspired to sell anything." (Trial Transcript (doc. 676), at 1024.) Even after stipulating to a Factual Resume in which he agreed that the Government could prove beyond a reasonable doubt that he had sold crack cocaine on multiple occasions from 406 Clay Street, Westry testified on cross-examination, "I'm not a crack seller." (*Id.* at 1035.) He denied that there was any agreement among the many narcotics distributors at 406 Clay Street and asserted that he was working on his own, all in conflict with his guilty plea. (*Id.* at 1040-41.)

Despite his guilty plea and cooperation, the Presentence Investigation Report (doc. 544) confirmed that Westry was facing the likelihood of prolonged prison time. Given the amount of crack cocaine sold by Westry in the controlled buys, as well as the statements of Beckham and Spanks which Westry had conceded the Government could prove beyond a reasonable doubt, the PSR calculated that Westry was personally involved with between 50 and 150 grams of cocaine

base, yielding a base offense level of 32 pursuant to U.S.S.G. § 2D1.1(c)(4). After a two-level upward adjustment for the firearm seized from 406 Clay Street at the time of the raid, and a two-level downward adjustment for acceptance of responsibility, the PSR calculated a total offense level of 32. Given Westry's criminal history category of V (which included a state-court felony conviction for possession of crack cocaine in 2001), his Sentencing Guidelines range was 188 to 235 months; however, Westry was facing a 20-year mandatory minimum sentence prescribed by 21 U.S.C. § 841(b)(1)(A) by virtue of his prior drug felony conviction,[3] such that his guideline of imprisonment was the statutory minimum of 240 months, by operation U.S.S.G. § 5G1.1(b).

      Notwithstanding Westry's unimpressive showing as a Government witness at the trial of his co-defendants, the Government filed a Motion for Downward Departure on his behalf on the eve of sentencing. In that Motion, the Government pointed out both the beneficial and harmful aspects of Westry's trial testimony, and requested that the undersigned depart downward 25% from the mandatory minimum statutory sentence of 240 months, pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e).[4] At the sentencing hearing, the undersigned concurred with the Government's assessment of Westry's trial testimony and indicated that the requested 25% reduction below the 240-month minimum was "generous on the part of the Government." (Sentencing Transcript (doc. 738), at 18-19.)

      Prior to sentencing, the Court was well aware of Westry's position that he was a drug addict and that his trafficking in narcotics at 406 Clay Street was conduct designed to facilitate his own addiction. In a letter to the Court received on January 18, 2006, Westry wrote, "Judge Steele I am a user and not a dealer." (Doc. 364, at Exh. 1.) In his testimony at the trial of his co-defendants, Westry testified, "I was a drug user. I was in addiction. I would have done anything

---

[3]    "If any person commits [a violation of § 841(a)] after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 20 years and not more than life imprisonment ...." 21 U.S.C. § 841(b)(1)(A).

[4]    That statute provides that "[u]pon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as a minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense." 18 U.S.C. § 3553(e).

to support my drug habit." (Doc. 676, at 1036.)  Westry further testified that his main objective was to get drugs for himself and that he never profited from selling drugs, but instead sold just enough drugs to feed his addiction. (*Id.* at 1037.)  On redirect examination, Westry stated his opinion that there is a distinction between people who sell drugs to use drugs and people who sell drugs to make money. (*Id.* at 1044.)  Moreover, the Presentence Investigation Report (doc. 544) which the Court reviewed and relied on in connection with Westry's sentencing included the following information: (a) "Westry states that he began to use marijuana at age 15, and used it daily, until his arrest in the instant offense"; (b) "defendant reports that he began to use cocaine at age 18, and used the illegal drug on a daily basis, prior to his incarceration"; and (c) Westry "states that he has a substance abuse problem, and requests treatment for same." (Doc. 544, ¶¶ 84-86.)  Westry was 25 years old at the time of his sentencing.

In connection with the sentencing hearing conducted on June 8, 2006, Westry's counsel, P. Bradley Murray, Esq., lodged a number of objections.  Of significance to the instant § 2255 Motion, Murray argued at the outset of the hearing as follows: "As far as the relevant conduct goes, we contend that [Westry] should not be held responsible or accountable for relevant conduct that occurred for co-conspirators during that time he was incarcerated." (Doc. 738, at 3.)[5]  Those periods of incarceration spanned from May 2001 through August 2002, and from October 2002 through April 2004. (Doc. 541, at 1.)

At the sentencing hearing, the Court granted the Government's Motion for Downward Departure and sentenced Westry to a term of imprisonment of 180 months on the conspiracy count, to be followed by a 10-year period of supervised release. (Doc. 738, at 19.)[6]  Westry did

---

[5]     This objection was echoed in petitioner's "Position of Defendant Leonard Westry with Respect to Sentencing Factors," wherein counsel wrote, "Defendant Leonard Westry objects to the inclusion in his PSI of any relevant conduct or consequences of the conspiracy for the periods during which he was incarcerated." (Doc. 541, at 1.)

[6]     This term of imprisonment was both substantially below the 20-year mandatory minimum sentence prescribed by 21 U.S.C. § 841(b)(1)(A), and far shorter than those of several of Westry's co-defendants who elected to proceed to trial rather than to plead guilty and cooperate with the Government.  Indeed, co-defendants Willie Earl Carter, Jr., Calvin Westry, Willie Merer Hinton, and Mack David Woodyard were each sentenced to a term of life imprisonment on the conspiracy charge, as a result of the death enhancement created by 21

not pursue a direct appeal; however, on June 6, 2007, he filed the instant § 2255 petition, in which he identified the following grounds for collaterally attacking his conviction and sentence: (i) a claim of ineffective assistance of counsel alleging that "[c]ounsel failed to raise that Westry was a drug user than a drug dealer"; (ii) a claim of ineffective assistance of counsel alleging that "[c]ounsel failed to have the government define the scope of Westry's involvement in the conspiracy and what was reasonably foreseeable to him"; and (iii) a claim of ineffective assistance of counsel alleging that "[c]ounsel was ineffective for failing to argue that Westry's 180 month sentence was unreasonable." (Doc. 723, at 5-8.)

## II.     Legal Standard.

Collateral relief is an extraordinary remedy which "may not do service for a [ ] [direct] appeal." *United States v. Frady*, 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). A defendant who has waived or exhausted his right to appeal is presumed to stand "fairly and finally convicted." *Frady*, 456 U.S. at 164. Unless a claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained extremely limited. *United States v. Addonizio*, 442 U.S. 178, 185, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979). Consequently, "[i]f issues are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack. ... A defendant is, of course, entitled to a hearing of his claims, but not to duplicate hearings. The appellate process does not permit reruns." *Moore v. United States*, 598 F.2d 439, 441 (5th Cir. 1979).

In general, claims not raised on direct appeal may not be considered on collateral review. A petitioner can, however, overcome his procedural default of claims not raised on direct appeal. The burden a petitioner must meet differs, depending upon the type of claim raised. First, "nonconstitutional claims can be raised on collateral review only when the alleged error constitutes a fundamental defect which inherently results in the miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *Burke v. United States*, 152 F.3d 1329, 1331 (11th Cir. 1998) (citations and internal quotations omitted). A petitioner's

---

U.S.C. § 841(b)(1)(A). Petitioner's counsel successfully argued at sentencing that the death enhancement should not be applied to Westry because Westry was and had been incarcerated for months when Jason Johns died of a drug overdose at 406 Clay Street.

burden with regard to constitutional claims not presented on direct appeal is slightly less stringent.  Constitutional claims may be considered if the petitioner can "show cause excusing his failure to raise the issues previously and actual prejudice resulting from the errors."  *Cross v. United States*, 893 F.2d 1287, 1289 (11th Cir. 1990).  Jurisdictional issues are not subject to procedural default because federal courts have limited jurisdiction and the parties cannot by waiver or default confer a jurisdictional foundation that is otherwise lacking.  *Harris v. United States*, 149 F.3d 1304, 1307 (11th Cir. 1998).

One way a petitioner may overcome a procedural default is by demonstrating that the default was attributable to constitutionally ineffective performance by trial or appellate counsel.  *Cross*, 893 F.2d at 1290.  "To prevail on a claim of ineffective assistance, a defendant must establish two things: (1) counsel's performance was deficient, meaning it fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defendant."  *Gordon v. United States*, 496 F.3d 1270, 1276-77 (11th Cir. 2007) (quoting *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)).  With respect to the deficient performance prong, a petitioner must show that counsel's performance was "objectively unreasonable and falls below the wide range of competence demanded of attorneys in criminal cases."  *Cross*, 893 F.2d at 1290; *see also Gallo-Chamorro v. United States*, 233 F.3d 1298, 1303 (11th Cir. 2000) (petitioner "must prove deficient performance by a preponderance of competent evidence, and the standard is reasonableness under prevailing professional norms").  "There is a strong presumption that counsel's performance was reasonable and adequate," which can be overcome only if the petitioner demonstrates that "no competent counsel would have taken the action that his counsel did take."  *Gordon*, 496 F.3d at 1281 (citations omitted); *see also Dingle v. Secretary for Dep't of Corrections*, 480 F.3d 1092, 1099 (11th Cir. 2007) (petitioner satisfies deficient performance only by proving that counsel "made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment").  The test for reasonableness of performance "is not whether counsel could have done something more or different; instead, we must consider whether the performance fell within the broad range of reasonable assistance at trial."  *Stewart v. Secretary, Dep't of Corrections*, 476 F.3d 1193, 1209 (11th Cir. 2007).

As for the prejudice prong, "[a] petitioner's burden of establishing that his lawyer's

deficient performance prejudiced his case is also high." *Stewart*, 476 F.3d at 1209 (citation omitted). Indeed, prejudice requires a showing of a "reasonable probability that the result of the proceedings would have been different had counsel not performed deficiently." *Cross*, 893 F.2d at 1290. A reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome." *Gallo-Chamorro*, 233 F.3d at 1303-04. A petitioner must show that the errors "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Cross*, 893 F.2d at 1292 (citation omitted). Thus, the prejudice requirement obliges a petitioner to prove "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Davis v. Terry*, 465 F.3d 1249, 1255 (11th Cir. 2006) (citation omitted).

"Conclusory allegations of ineffective assistance are insufficient." *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) (citation omitted). Rather, an attorney's performance may be found ineffective in the constitutional sense only if "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

> "When reviewing whether an attorney is ineffective, courts should always presume strongly that counsel's performance was reasonable and adequate. ... Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so. This burden, which is petitioners' to bear, is and is supposed to be a heavy one. And, we are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial ... worked adequately. Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."

*Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994) (internal quotations and citations omitted); *see also Caderno v. United States*, 256 F.3d 1213, 1217 (11th Cir. 2001) ("There is a strong presumption that counsel's performance was reasonable and adequate, with great deference shown to choices dictated by reasonable trial strategy.").

**III.    Analysis.**

   ***A.    Impact of Limited Appeal Waiver.***

As a threshold matter, the Government urges this Court to find that Westry waived all of his § 2255 claims via the Plea Agreement. The Plea Agreement signed by Westry includes a

section captioned, "Limited Waiver of Right to Appeal Sentence," wherein with certain delineated exceptions, Westry waived his right to challenge his sentence or the manner in which it was determined "in any collateral attack, including but not limited to, a motion brought under 28 U.S.C. § 2255." (Doc. 454, ¶ 18.) The Government's position is that this appeal waiver is fatal to Westry's § 2255 motion.

The Court cannot agree. Review of the Plea Agreement reveals that the enumerated exceptions to the appeal waiver specifically include claims of ineffective assistance of counsel. Indeed, the Plea Agreement provides that Westry "reserves the right to contest in an appeal or post-conviction proceeding any of the following: ... A claim of ineffective assistance of counsel." (Doc. 454, ¶ 19(c).)[7] This language expressly carves out and authorizes Westry to bring the very ineffective assistance claims he is pursuing in this § 2255 action; therefore, it is quite plain from the face of the Plea Agreement that Westry has not waived, and is in no way contractually precluded from, collaterally attacking his sentence on the ground that Murray rendered ineffective assistance of counsel in connection with sentencing.

In arguing otherwise, the Government inexplicably ignores Paragraph 19(c) altogether, arguing instead that Westry "waived the right to challenge any sentence other than (1) a sentence in excess of the statutory maximum, or (2) an upward departure by the Court." (Government Brief (doc. 742), at 19.) Of course, the Government cannot rewrite the Plea Agreement at this time to suit its purposes, and the Court cannot disregard the plain language of that Agreement simply because the Government now may wish that it had been drawn up differently. Nor is the Court persuaded by the Government's efforts to analogize this case to *Williams v. United States*, 396 F.3d 1340 (11th Cir. 2005). To be sure, the *Williams* holding lends superficial support to the Government's position, inasmuch as the *Williams* court agreed with other circuits that "a valid sentence-appeal waiver ... precludes the defendant from attempting to attack, in a collateral proceeding, the sentence through a claim of ineffective assistance of counsel during sentencing." *Id.* at 1342. The difference is that, unlike the *Williams* appeal waiver, Westry's appeal waiver

---

[7] The Plea Agreement also preserves Westry's right to contest via appeal or post-conviction proceeding "[a]ny punishment imposed in excess of the statutory maximum" and "[a]ny punishment that constitutes an upward departure from the guideline range." (Plea Agreement (doc. 454), ¶ 19.a.-b.)

-9-

expressly authorized and permitted him to bring claims of ineffective assistance of counsel on collateral review.[8]  Thus, *Williams* is inapposite because of a fundamental, material difference in the underlying agreement.  Having presented Westry with a Plea Agreement that squarely permitted him to bring a § 2255 challenge predicated on ineffective assistance of counsel, the Government cannot now complain that such a theory of relief is waived by operation of that Agreement.  This objection is **overruled**, and the Court will consider the merits of the § 2255 petition.

### B.  Ineffective Assistance: Drug User Rather than Drug Dealer.

Westry's first ground for relief under § 2255 is his contention that his attorney (Murray) rendered ineffective assistance by failing to investigate and raise Westry's drug addiction.  From petitioner's submissions, it is unclear when he contends counsel should have raised the issue, but the Court understands Westry's principal argument to be that evidence of Westry's lengthy history of drug addiction might have resulted in imposition of a lesser sentence.[9]

---

[8] The Eleventh Circuit did not quote the *Williams* plea agreement in its entirety; however, review of the appellate briefs in that case reveals that the appeal waiver in *Williams* was worded as follows: "The defendant ... expressly waives the right to appeal defendant's sentence, directly or collaterally, on any ground, ... except for an upward departure by the sentencing judge, a sentence above the statutory maximum, or a sentence in violation of the law apart from the sentencing guidelines." *Williams v. United States*, 2004 WL 3399641, *2 (Appellate Brief).  Thus, unlike the agreement signed by Westry, the *Williams* plea agreement did not authorize the defendant to bring a § 2255 action alleging that he was deprived of his right to effective assistance of counsel at sentencing.

[9] In portions of his briefs, Westry suggests that his "drug addiction would have or could have provided a reasonable defense to the charges in the indictment," that evidence of his drug addiction would have been "a formidable challenge to the allegations the charging instrument," and that a jury might have exonerated him on that basis. (Petitioner's Brief (doc. 731), at 4-5.)  This line of argument fails for myriad reasons, of which two will be mentioned here.  First, addiction to drugs is not a valid defense to federal controlled substances charges.  *See, e.g., United States v. Griffin*, 909 F.2d 1222, 1224 (8th Cir. 1990) ("mere addiction to drugs is not a defense to charges of conspiracy to distribute and possession with intent to distribute"); *United States v. Blackner*, 901 F.2d 853, 854-55 (10th Cir. 1990) ("[p]ossession with intent to distribute a large quantity of cocaine is, unlike the simple state of addiction, a culpable act") (citation omitted).  Were the law otherwise, the majority of the drug offenders that this Court sentences would go free, as it is quite common for defendants in this judicial district who are adjudicated guilty under § 841 or § 846 to have engaged in the distribution of controlled

Westry fails to identify what investigation he believes Murray should have done into his background, but did not do, much less to explain how the fruits of that investigation would have been reasonably likely to alter the results of the underlying criminal proceeding. At sentencing, the undersigned was well apprised of Westry's history of drug dependency and its relationship to the criminal offense to which he pleaded guilty, inasmuch as the Court had heard Westry's trial testimony to that effect and had the benefit of specific information in the Presentence Investigation Report documenting Westry's history of chronic substance abuse dating back to his early teenage years. As such, the Court had this information available and was able to weigh it in the § 3553(a) calculus to the extent authorized by law. Westry having failed to demonstrate what additional information pertinent to his drug abuse history could have been developed upon reasonable investigation, but was not, much less to establish that such inadequacies created a reasonable probability that the results of the underlying criminal proceeding were compromised in some way by that omission, he has failed to establish any basis for finding that his Sixth Amendment right to counsel was violated in this respect. *See generally Crawford v. Head*, 311 F.3d 1288, 1313 (11th Cir. 2002) ("no absolute duty exists to investigate particular facts or a certain line of defense") (citations omitted).

More generally, Westry appears to base his prejudice argument on his belief that evidence of his drug addiction might have prompted this Court to depart downward from the 240-month Guidelines sentence even further than it already did when it granted the

---

substances to support their own drug habits. Westry is hardly unique in that respect. Second, the fact remains that Westry pleaded guilty, thereby waiving the right to present any affirmative defenses to a jury. *See, e.g., United States v. Patti*, 337 F.3d 1317, 1320 (11th Cir. 2003) ("Generally, a voluntary, unconditional guilty plea waives all nonjurisdictional defects in the proceedings."); *United States v. Kaiser*, 893 F.2d 1300, 1302 (11th Cir. 1990) ("Once a conviction upon a guilty plea has become final, the general rule is that any challenge to the conviction is limited to whether the underlying plea was counseled and voluntary."). Westry has made no showing that he would not have pleaded guilty had his attorney conducted further investigation into the obviously futile addiction defense, so no ineffective assistance of counsel claim is cognizable to speculate what a jury might have decided had Westry elected not to plead guilty and instead proceeded to trial on a legally baseless "mere addict" theory. *See Jackson v. United States*, 976 F.2d 679, 681 (11th Cir. 1992) ("To establish a claim of ineffective assistance in a guilty plea situation, [defendant] must show that but for counsel's errors, he would not have pled guilty.").

Government's § 5K1.1 motion and cut his sentence to 180 months. Under the circumstances presented here, however, it would have been clear error to depart on the basis of Westry's history of drug addiction. "Drug or alcohol dependence or abuse is not a reason for a downward departure." U.S.S.G. § 5H1.4; *see also* § 5K2.0(d)(1) (identifying drug dependence or abuse as "prohibited departures"); *United States v. Kane*, 470 F.3d 1277, 1281 (8th Cir. 2006) (explaining that "drug or alcohol abuse and mental conditions are not proper grounds for a downward variance, absent extraordinary circumstances"). In *United States v. Cani*, 2007 WL 1558641 (11th Cir. May 31, 2007), the Eleventh Circuit recently reversed a district court decision to depart downward at sentencing in a drug distribution case because of the defendant's drug addiction. In vacating the sentence, the *Cani* court determined that "[t]he district court based the downward departure on an impermissible factor" (namely, the defendant's addiction to heroin), warranting vacatur and remand for resentencing. *Id.* at *1; *see also United States v. Stumpner*, 2006 WL 869611, *2 (11th Cir. Apr. 5, 2006) ("Stumpner's argument that he should receive a reduced sentence because he has suffered from long-term drug addiction fails because even under the sentencing guidelines policy statements, drug or alcohol dependence or abuse is not a valid reason for departure."). As such, it is clear that Westry sustained no prejudice by virtue of his counsel's failure to develop evidence of drug addiction and to argue for a downward departure at sentencing on that basis. It is equally clear that this omission by counsel does not rise to the level of constitutionally deficient performance. *See Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994) ("it is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance" of counsel); *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984) (counsel is not ineffective for failing to raise issues "reasonably considered to be without merit").

For all of these reasons, the Court finds that Westry has shown neither deficient performance nor prejudice with regard to his contention that Murray should have raised the issue of his drug addiction at sentencing.[10]

---

[10]  In briefing this question, Westry implies that Murray forced him to plead guilty. To the extent that Westry intends to challenge the validity of his guilty plea on the basis that he was compelled against his will to enter into such a plea, the Court rejects such a contention. At his guilty plea hearing conducted on March 3, 2006, Westry stated under oath that no one had

### C.    Ineffective Assistance: Failure to Limit Scope of Conspiracy for which Westry was Held Accountable.

Next, petitioner criticizes his attorney's performance by arguing "that counsel abandoned his duty of representation at a critical stage of Movant's sentencing proceedings, by failing to object to the Court's improper use of ... the relevant conduct standard ..., which impermissibly shifted the entire drug amount to Movant." (Petitioner's Brief (doc. 731), at 6.) Petitioner continues by asserting that "[i]n the absence of an objection, Movant was left to stand at the Bar alone and watch as the court applied the improper standard of relevant conduct and automatically shifted the entire drug amount to him." (*Id.* at 9.)

Cutting through the rhetoric, Westry's contention is counterfactual in two critical

---

attempted to force him to plead guilty in this case and that he was pleading guilty of his own free will because he is in fact guilty. (Guilty Plea Hearing Transcript (doc. 741), at 5-6.) Westry informed the Court twice during the hearing that he was fully satisfied with Murray's representation and advice. (*Id.* at 4, 9.) Westry is bound by these averments. Indeed, the Supreme Court has cautioned lower courts to view attempts to subvert in-court statements as to the knowing and voluntary nature of a guilty plea with a jaundiced eye, reasoning that "the representations of the defendant ... [at a plea proceeding] as well as any findings made by the judge in accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977) (explaining that the various advantages of the plea bargaining system "can be secured ... only if dispositions by guilty plea are accorded a great measure of finality"); *see generally United States v. Winston*, 34 F.3d 574, 578 (7th Cir. 1994) ("the record of a Rule 11 proceeding is entitled to a 'presumption of verity,' and [the] answers contained therein are binding"); *Cunningham v. Diesslin*, 92 F.3d 1054, 1060-62 (10th Cir. 1996) (habeas petitioner's claim that he relied upon counsel's promise that he would only serve half his sentence was undermined by petitioner's statements in open court, which carry a strong presumption of verity); *United States v. Marrero-Rivera*, 124 F.3d 342, 349 (1st Cir. 1997) (rejecting petitioner's claims that counsel pressured him to plead guilty, where such claims contradicted sworn responses in Rule 11 hearing, as "it is the policy of the law to hold litigants to their assurances"); *United States v. Martinez*, 169 F.3d 1049, 1054 (7th Cir. 1999) (where a defendant is given several in-court opportunities to reveal improper representations by attorney regarding sentence and fails to do so, that failure overrides later claims that he would not have pleaded guilty but for flawed advice). Westry has offered no evidentiary basis for overcoming the strong presumption of verity accorded to his representations under oath during the change of plea hearing that he was pleading guilty of his own volition and that no one had attempted to force him to do so; therefore, he cannot be heard to complain otherwise now, absent an extraordinary showing that he has not made.

respects. First, with regard to counsel's alleged silence, Murray specifically objected both before and during the sentencing hearing to Westry being held accountable at sentencing for any relevant conduct by co-conspirators during the time in which he was incarcerated on other charges. Thus, Westry's contention that his attorney failed to object to relevant conduct attributed to him at sentencing is simply untrue.

Second, and more importantly, Westry's repeated assertion that he was improperly held responsible for "the entire drug amount" is incorrect. Westry's base offense level was calculated at 32, which corresponds to involvement with at least 50 grams but less than 150 grams of crack cocaine. U.S.S.G. § 2D1.1. The facts to which Westry stipulated in the Factual Resume were more than sufficient to attribute this drug quantity to Westry through his own personal conduct. In particular, the Factual Resume recited three occasions on which Westry had sold rocks of crack cocaine to confidential informants; a statement from Beckham that Westry had sold crack cocaine in $200 amounts; and a statement from Spanks that he had purchased at least three ounces (or 85.05 grams) of crack cocaine from Westry during the conspiracy timeframe.[11] Thus, there was ample evidence from the stipulated facts to support a conclusion that Westry personally had sold more than 50 grams of crack cocaine in connection with the conspiracy. As a result, petitioner's characterization of his sentencing proceeding as one in which he was held accountable for drug quantities not foreseeable to him is simply false;[12] to the contrary, the drug

---

[11] Remarkably, Westry now takes the position that he "could only have been accountable for the 2 very small sales he accepted responsibility for." (Petitioner's Brief (doc. 731), at 9.) Review of the Factual Resume to which Westry stipulated and agreed upon pleading guilty conclusively establishes that he accepted responsibility for (or at least accepted the inevitability that the Government could prove his involvement with) far more than "2 very small sales" of crack cocaine.

[12] Had the Government sought to include in relevant conduct the narcotics distribution activities of Westry's co-conspirators, the amount would have been far higher. For example, in the guilty plea hearing, the Government represented that the evidence would show that in excess of 1.5 kilograms of crack cocaine and many thousands of pills were distributed from 406 Clay Street during the course of conspiracy. (Doc. 741, at 12.) Yet the Government limited the "relevant conduct" inquiry for Westry to drug amounts that he had personally sold. Far from being unfair or improper, this approach was quite lenient and redounded to Westry's benefit.

quantity for which Westry was held accountable was limited to amounts of crack cocaine that Westry admitted the Government could prove beyond a reasonable doubt that he had actually sold. As such, there is no U.S.S.G. § 1B1.3 defect in Westry's sentencing.[13] Any argument by counsel to the contrary would have been frivolous; therefore, Murray's failure to assert at the sentencing hearing that it was not reasonably foreseeable to Westry that he would be held accountable for quantities of crack cocaine that he had personally distributed amounts to neither deficient performance nor the sort of prejudice that can give rise to a Sixth Amendment violation for ineffective assistance of counsel. This ground for relief is meritless.

### D.    Ineffective Assistance: Failure to Object to Sentence as Unreasonable.

Petitioner also charges Murray with ineffective assistance in failing to argue at sentencing that the 180-month sentence imposed was "unreasonable because the Movant's abusive drug abuse problem ... caused him to scrap and beg his family (who was in the business of selling drugs) for money to satisfy his habit." (Petitioner's Brief (doc. 731), at 9-10.)

Let's be clear here. Because of his criminal history and the conduct to which he admitted in pleading guilty to the § 846(a) charge, Westry was facing a 240-month mandatory minimum sentence by operation of 21 U.S.C. § 841(b)(1)(A). This Court does not have the authority to deviate below statutory mandatory minimum sentences because a defendant may be sympathetic or may be facing difficult personal circumstances. "There are only two circumstances in which a court can depart downward from a statutorily authorized mandatory minimum sentence. Either the Government must file a motion to recognize the defendant's 'substantial assistance' in the investigation or prosecution of another, see 18 U.S.C. § 3553(e), or, the defendant must fall within the provisions of the 'safety valve' embodied in 18 U.S.C. § 3553(f)." *United States v.*

---

[13]    "U.S.S.G. § 1B1.3(a)(1)(A) provides that, to determine the base level of the charged offense, the district court must consider as relevant all acts and omissions committed, aided and abetted, counseled, commanded, induced, procured, or willfully caused by the defendant. In the case of a conspiracy, the district court must consider all acts by other participants that were both reasonably foreseeable and in furtherance of the conspiracy." *United States v. Ryan*, 289 F.3d 1339, 1348 (11th Cir. 2002). The procedure followed by this Court at sentencing to determine a base level for Westry falls well within the *Ryan* paradigm; therefore, any objection by counsel would have been meritless, and would not have been reasonably likely to have any effect on the outcome of the sentencing proceeding.

*Simpson*, 228 F.3d 1294, 1304-05 (11th Cir. 2000).[14]  The safety valve was plainly inapplicable here because of Westry's criminal history.  Therefore, the Court was empowered to reduce Westry's sentence below 240 months only upon an appropriate motion by the Government based on substantial cooperation with the investigation or prosecution of another.  Despite Westry's decidedly poor performance as a Government witness at the trial of his co-defendants, the Government in its discretion filed the requisite § 5K1.1 motion requesting a downward departure of 25% from the statutory minimum.  Under the circumstances, this request struck the Court as quite generous given Westry's ineffectiveness on the witness stand; nonetheless, the Court granted the 25% departure, much to Westry's benefit.

Westry apparently now contends that Murray should have urged the Court to use the Government's § 5K1.1 motion as a springboard to depart downward based on other considerations such as Westry's history of drug addiction.  To do so would have been to commit reversible error.  This is precisely what occurred in *United States v. McVay*, 447 F.3d 1348 (11th Cir. 2006), where the district court granted the Government's motion for downward departure based on substantial assistance and further reduced the sentence on the grounds of the defendant's "exemplary record" and family circumstances.  In reversing that determination, the *McVay* court explained that "although the sentencing court had discretion under § 5K1.1 to decide (1) whether to depart from the guidelines based on substantial assistance, and (2) if so, the reasonable extent of that departure, plainly it did *not* have discretion to consider factors altogether unrelated to the nature and extent of [defendant]'s assistance." *McVay*, 447 F.3d at 1355.  Thus, Westry contends his attorney rendered constitutionally deficient performance by failing to raise an argument at sentencing that the Eleventh Circuit has foreclosed as a matter of law.

In light of these circumstances, this Court is firmly convinced that any argument at sentencing by Murray that 180 months was an unreasonable sentence for his client and that a further downward departure should be granted because of Westry's history of drug abuse would

---

[14]  Even when the Sentencing Guidelines became advisory in the wake of *Booker*, the "district court was, and still is, bound by the statutory minimums." *United States v. Shelton*, 400 F.3d 1325, 1333 n.10 (11th Cir. 2005).

have been frivolous, legally unsupportable, and certain to fail.  Murray's decision not to raise such a patently unfounded argument cannot reasonably be deemed constitutionally deficient performance, and Westry's Sixth Amendment argument predicated on that theory is meritless.

### E.     *Ineffective Assistance: Failure to File a Direct Appeal.*

Although not raised as a separate ground in his petition, Westry repeatedly ascribes fault to his attorney for failing to file a direct appeal on his behalf.[15]  To the extent that Westry would seek § 2255 relief on this basis, the claim fails as a matter of law.  This Circuit hews to "the well-settled rule that an attorney who fails to file an appeal on behalf of a client who specifically requests it acts in a professionally unreasonable manner *per se*."  *Thompson v. United States*, --- F.3d ----, 2007 WL 3033152, *1 (11th Cir. Oct. 18, 2007) (citing *Gomez-Diaz v. United States*, 433 F.3d 788, 792 (11th Cir. 2005)).  However, the uncontroverted evidence of record here is that Murray met with Westry twice after the sentencing hearing to discuss the possibility of appeal, and that Westry "instructed [Murray] not to appeal his case. [Murray] offered to file his Notice of Appeal for him, offered him the actual draft Notice of Appeal, he chose not to sign and informed [Murray] not to appeal his case."  (Murray Aff. (doc. 742, Exh. 2), ¶ 7.)  Petitioner does not allege that he instructed Murray to file an appeal on his behalf, but that Murray refused. Petitioner does not suggest that Murray failed to consult with him about the pros and cons of a potential appeal.  Simply stated, then, petitioner does not contest any of his attorney's unequivocal representations that counsel consulted with Westry in detail about his right of appeal and that Westry elected after that consultation not to pursue a direct appeal.  In light of these unchallenged facts, any argument by Westry that his Sixth Amendment rights were violated because Murray failed to file a direct appeal on his behalf are factually unsupported and wholly frivolous.

### IV.    Conclusion.

For all of the foregoing reasons, Westry's Motion Under 28 U.S.C. § 2255 to Vacate, Set

---

[15]     In two different places in his § 2255 petition, Westry writes, "Counsel failed to file a direct appeal in this matter." (Petition (doc. 723), at 5, 8.)  In a third place, Westry states, "Counsel did not file an appeal." (*Id.* at 7.)  Given the accusatory tenor of these assertions, it is appropriate to explore whether these allegations might support a Sixth Amendment claim for relief under § 2255.

Aside or Correct Sentence by a Person in Federal Custody (doc. 723) is **denied**.[16]  A separate judgment will enter.

**DONE** and **ORDERED** this 2nd day of November, 2007.

                                               s/ WILLIAM H. STEELE
                                               UNITED STATES DISTRICT JUDGE

---

[16]  The law is clear that "[a] district court may deny relief under 28 U.S.C. § 2255 without an evidentiary hearing if the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Long v. United States*, 883 F.2d 966, 968 (11th Cir. 1989) (citations omitted); *see also Lynn v. United States*, 365 F.3d 1225, 1239 (11th Cir. 2004) (reaffirming principle that § 2255 petitioner is not entitled to evidentiary hearing when his claims are mere conclusory allegations unsupported by specifics).  As the file in this case conclusively establishes that Westry is not entitled to relief on the grounds specified in his § 2255 petition, an evidentiary hearing would serve no purpose.  Accordingly, Westry's § 2255 petition is denied without a hearing.